OWEN WHITE *vs.* PHŒNIX INSURANCE COMPANY.

Androscoggin.     Opinion November 7, 1892.

*Insurance.     Vacant Buildings.     Presumption.     Evidence.     R. S., c. 49, § 20.*

When an insured, occupied building becomes unoccupied, the risk of its destruction by fire is presumed to be increased.

This presumption alone is sufficient to sustain the burden imposed upon the insurers, unless it is rebutted by the peculiar condition, construction and surrounding circumstances of the building.

The condition, construction and surrounding circumstances of the buildings in this case, support, rather than rebut the presumption.

See *White* v. *Phœnix Insurance Company*, 83 Maine, 279.

ON MOTION.

This was an action of assumpsit on a policy of fire insurance. The defense was that the premises had remained unoccupied for ten months previous to the fire without notice to the company, or its consent indorsed on the policy as by it was required ; and that the non-ocupancy had materially increased the risk. The verdict was for the plaintiff for the full amount of the policy and interest, and was the second trial of the same case. See 83 Maine, 279.

*Savage and Oakes*, for plaintiff.
*Baker, Baker and Cornish*, for defendant.

VIRGIN, J.    When this case was formerly before the court it declared in substance that when an insured, occupied building becomes unoccupied, the risk of its destruction by fire is presumed to be thereby increased.    And while, by force of R. S., c. 49, § 20, the burden of showing that the risk was thereby increased is upon the insurers, the presumption alone which follows the fact of vacancy, unless rebutted by the peculiar condition, construction and surroundings of the buildings, is sufficient to sustain that burden.    *White* v. *Phœnix Ins. Co.* 83 Maine, 279.

We seek in vain through this report for any evidence what-

ever of any "peculiar conditions, construction or surroundings of the buildings insured," which tend to diminish the risk arising from non-occupancy. On the contrary they all seem rather to strengthen and support instead of rebut the general presumption.

On the east side of the highway running southerly from the village of one hundred and twenty-five inhabitants, known as "Litchfield Corner," and sixty-one rods therefrom, were the buildings in question. They consisted of a small story and one half dwelling-house, connected by ell and woodhouse to the west end of a barn thirty-eight by fifty-two feet, containing sixteen tons of hay, the larger part in a mow on the north side, and the remainder on a scaffold on the south. A shed formerly extended along the entire length of the barn on the north side ; but, some years before the fire, the roof was crushed by the snow and it had never been repaired, but remained still open.

For well understood reasons, the likelihood of the destruction of a vacant building by fire from accident resulting from voluntary or involuntary acts of trespassers and tramps visiting it, would seem to increase with the distance intervening between it and occupied buildings. The extinguishment of fires, accidental or intentional, in the absence of any fire system, must depend upon the acts of neighbors and the facilities adapted to the purpose, added to those furnished within the premises on fire. Hence poor buildings on a cheap farm in a remote neighborhood, without neighbors, are much exposed to the peculiar dangers mentioned. *Lancy* v. *Home Ins. Co.* 82 Maine, 492.

The surroundings of the plaintiff's buildings can hardly be duplicated in this State. They were situated in the extreme outskirts of the village. They had been vacant "nearly a year;" and within a radius of fifty rods therefrom there were only twelve buildings,— six houses, two barns, a blacksmith shop, an old mill, an academy and a church,— all vacant at the time of the fire, with the exception of two of the houses and one of them in doubt.

There was no fire system in the village. The only water about the premises destroyed was a well in which was a pump, in the cellar of the house, and a well in the barn. No buckets, ladders, or other facilities for extinguishing fires.

The fire was near mid-day and was first discovered where there was the most hay, near the tumble-down shed. It could hardly have been caused by sparks from neighboring buildings — no fires were there. The increased risks which spring from the knowl-edge of idlers, loungers, tramps, vagrants and marauders that it was unoccupied was fatal to its safety, and the verdict is against law.

*Motion sustained.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.